**SO ORDERED.**

**SIGNED this 31 day of March, 2015.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                          CASE NO.

**LARRY BARROW, SR.**                            **14-06570-5-SWH**
**LOIS M. BARROW**

       **DEBTORS**

## ORDER REGARDING MOTIONS FOR RELIEF FROM STAY

This matter came on to be heard upon the motions for relief from the automatic stay filed by DAN Joint Venture Properties of North Carolina, LLC ("DAN") seeking authority to proceed with state court actions currently pending against Larry Barrow, Sr. and Lois M. Barrow (the "debtors"). A hearing was held on January 28, 2015 in Raleigh, North Carolina.

### BACKGROUND

A long and complex history precedes the filing of DAN's motions for relief from the automatic stay, which will be recounted herein. Between July 1993 and March 1999, L.L. Murphrey Company ("LLM") executed five promissory notes in favor of Wachovia Bank, N.A., predecessor in interest to DAN, in exchange for certain loans. The notes were secured by a deed of trust tendered by LLM, the debtors, Doris Murphrey, Connie M. Stocks and Donald Stocks on eleven parcels of

real property, five of which were owned by LLM.  Only the debtors, Doris Murphrey, Connie M. Stocks and Donald Stocks (the "guarantors") hold an ownership interest in the remaining six parcels (the six parcels will be referred to as the "Property").  The guarantors also executed an unconditional guaranty agreement on the notes in favor of Wachovia.

On June 8, 2000, LLM filed a voluntary chapter 11 petition in bankruptcy, and on July 13, 2001, an Order was entered confirming LLM's Fourth Amended Plan of Reorganization (the "Plan"). In re L.L. Murphrey Co., Case No. 00-03213-8-JRL (Bankr. E.D.N.C. July 13, 2001).  Under the confirmed Plan, the treatment of DAN's claim provided for the consolidation of the five promissory notes referenced above into two notes, Note A and Note B, which were to be recapitalized upon maturity on September 30, 2011.  The Plan provided that the pre-petition collateral and guaranties were to remain in effect throughout the course of the Plan, except as modified to reflect the amount of the recapitalized debt.  On August 9, 2002, a final decree was entered and LLM's chapter 11 case was closed.  However, upon maturation of the Notes, the parties were unable to reach an agreement as to the amount of the recapitalized debt, and LLM moved to reopen its chapter 11 case to initiate an adversary proceeding to determine the amount of the debt.  The case was reopened by Order dated April 14, 2011.

On April 25, 2011, the debtors, LLM and Doris Murphrey initiated the bankruptcy adversary proceeding against DAN seeking declaratory relief as to the amount owed on the debt, the repayment terms, and the obligations and liability of the guarantors under the Plan.  On December 16, 2011, an Order was entered finding the amount of the recapitalized debt under the Plan to be $6,186,362.00. L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P. (In re L.L. Murphrey Co.), Adv. Pro. No. 11-00139-8-JRL, at *6 (Bankr. E.D.N.C. Dec. 16, 2011).  On March 16, 2012, DAN moved for

reconsideration of the December 16, 2011 Order on the basis that the Order did not resolve all of the claims at issue. On May 10, 2012, the court granted DAN's motion for reconsideration upon finding that the December 16, 2011 Order did not provide the requested declaratory relief as to the guarantors' liability. The May 10, 2012 Order addressed the previously overlooked issue, finding that "this is not a case in which guarantor liability was in any way eliminated; it was simply modified to be congruent with the new debt created by the plan." L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P. (In re L.L. Murphrey Co.), Adv. Pro. No. 11-00139-8-JRL, at *4-5 (Bankr. E.D.N.C. May 10, 2012). More specifically, the May 10, 2012 Order clarified that the guarantors' liability was capped at the amount of the recapitalized debt under the terms of the Plan, and that it was unambiguous that "the confirmed plan left the identity of the pre-existing guarantors unchanged but modified their liability to be congruent with the Recapitalized Debt to Wachovia established by the plan." Id. at *3.[1] On May 21, 2012, LLM filed a petition under chapter 7.

---

[1]At the January 28, 2015 hearing before this court, the debtors asserted that the guarantors' liability was **not** at issue in the bankruptcy court adversary proceeding. This court simply cannot agree. Not only was the guarantors' liability at issue, it was determined. The complaint filed by the debtors, LLM and Doris Murphrey in the adversary proceeding "ask[ed] this Court to adjudicate and determine the rights of the parties to the amount owed on certain obligations, the repayment terms for such obligations, if any, and *the liability of the Guarantors, if any, under the Plan.*" Complaint, Adv. Pro. No. 11-00139-8-JRL, Doc. No. 1 at 2 (emphasis added). The complaint also sought a declaration that the guarantors were not contingently liable for any amount *other than the amount of the Recapitalized Debt*. Complaint, Adv. Pro. No. 11-00139-8-JRL, Doc. No. 1 at 5. In response, the court ruled that "there can be no ambiguity but that the confirmed plan left the identity of the pre-existing guarantors unchanged," and found that the Plan was unambiguous in its provision stating that the "guaranties will remain in full force and effect for the Notes." L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P. (In re L.L. Murphrey Co.), Adv. Pro. No. 11-00139-8-JRL, at *3 (Bankr. E.D.N.C. May 10, 2012). The court incorporated the Bankruptcy Administrator's summary of the Plan in its ruling: "'*The Notes shall remain secured by the same collateral* that secured Wachovia's claims prior to the petition date, and *the guaranties will remain in full force and effect* except as adjusted to reflect the amount of the Recapitalized Debt as defined in the Plan.'" Id. (emphasis added).

On May 24, 2012, the debtors, along with Doris Murphrey, initiated a cause of action in Greene County Superior Court to determine their obligations to DAN (the "Guaranty Action"). The debtors and Doris Murphrey asserted that the expiration of the statute of limitations prevented DAN from bringing any claims against them based on the guaranty, and DAN counterclaimed and crossclaimed that the guarantors were in breach of the guaranty agreement as modified by the Plan. Upon cross motions for summary judgment, the superior court granted summary judgment in favor of the debtors and Doris Murphrey, finding that the statute of limitations prevented DAN from asserting any claims arising out of the guaranty. However, on appeal, the North Carolina Court of Appeals reversed, ruling that the debtors were estopped from asserting the statute of limitations defense by virtue of the *res judicata* effect of the May 10, 2012 Order entered in the bankruptcy court adversary proceeding between the debtors, LLM, Doris Murphrey and DAN, and remanded the case to the superior court to determine the amount of the guarantors' liability. Barrow v. D.A.N. Joint Venture Props. of N.C., LLC, 755 S.E.2d 641, 648 (N.C. Ct. App. 2014).

On January 23, 2013, the trustee in LLM's chapter 7 case filed a motion to sell property of LLM free and clear of liens under § 363(f)(4), including the five tracts owned by LLM that were subject to DAN's deed of trust. On June 6, 2013, an Order was entered allowing the trustee's motion upon finding the existence of a bona fide dispute as to the validity of DAN's liens. The court found that the failure to execute restated loan documents, as provided for in the Plan, created a dispute as to the basis and validity of DAN's claim and asserted liens. In re L.L. Murphrey Co., Case No. 12-03837-8-JRL (Bankr. E.D.N.C. June 6, 2013). On July 12, 2013, the court approved a settlement between LLM, DAN, the debtors and others that provided for a distribution of $725,000.00 to DAN from the sale of LLM's property.

In September 2013, DAN commenced a foreclosure proceeding in Greene County Superior Court seeking to foreclose under the deed of trust on the Property owned by the guarantors (the "Foreclosure Action"). The debtors and Doris Murphrey objected to the proceeding by contesting the validity of DAN's liens and raising the statute of limitations as a defense, but the superior court entered an order authorizing foreclosure. The superior court order was appealed to the North Carolina Court of Appeals, which affirmed on October 7, 2014. The court of appeals found that DAN was the holder of a valid debt, as evidenced by the Plan and the December 16, 2011 Order in the bankruptcy adversary proceeding, and that it had the right to foreclose on the Property under the deed of trust. In direct response to the bankruptcy court's finding of a bona fide dispute as to validity of DAN's liens in the June 6, 2013 Order entered in LLM's chapter 7 case, the court of appeals found that the Plan's validity and enforceability did not depend on the execution of restated loan documents, and that regardless, the guarantors waived their right to contest validity by making payments in accordance with the plan for ten years. On November 11, 2014, 35 days after the entry of the court of appeals judgment, the debtors filed for relief under chapter 11.[2]

On December 19, 2014, DAN filed the instant motions for relief from the automatic stay to proceed with the two actions pending in Greene County Superior Court. DAN seeks relief to allow the superior court to determine the amount of the guarantors' liability and to complete its foreclosure action by conducting a sale of the Property. Relying on the Fourth Circuit decision in In re Robbins, 964 F.2d 342 (4th Cir. 1992), and the factors set forth therein for evaluating whether stay relief should be granted to allow state court actions to proceed, DAN contends that it would be proper to

---

[2]The debtors assert in their response to DAN's motion for relief from stay as to the Foreclosure Action that the time period for appealing the court of appeals' ruling had not expired when it filed for bankruptcy, but the court finds no support for this statement.

grant stay relief as to both motions.  DAN also asserts that relief should be granted as to the Foreclosure Action because it lacks adequate protection and because the debtors have no equity in the Property and the Property is not necessary for an effective reorganization.

The debtors object to lifting the automatic stay in both instances, arguing primarily that granting the requested relief would usurp the court's exclusive jurisdiction to determine the amount and validity of DAN's claims and interfere with the claims objection process, and that the Property is necessary for an effective reorganization.

## DISCUSSION

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1).  The automatic stay is one of the fundamental protections afforded to debtors by the Bankruptcy Code.  Winters ex rel. McMahon v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996).  "[The automatic stay] permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." Id. (quoting Williford v. Armstrong World Indus., 715 F.2d 124, 127 (4th Cir. 1983)). However, the automatic stay is not absolute, and the court has authority to lift the stay if certain statutory bases are present.  The court may lift the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest," or, in the alternative, if "the debtor does not have equity in such property" and "such property is not necessary to an effective reorganization."  § 362(d).  DAN argues that cause exists for relief from the stay to allow it to proceed with both state court actions, and additionally, that with regard to the Foreclosure Action,

there is no equity in the Property and the Property is not necessary to an effective reorganization of the debtors.

The court will deal first with DAN's motion for relief from stay as to the Guaranty Action. In determining whether cause exists to allow a state court action to proceed, the court must weigh the potential prejudice to the debtor's estate against the hardship to be incurred by the person seeking relief from the stay. In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992). In doing so, the court considers certain factors, including: (1) whether the issues involve solely state law, such that the expertise of the bankruptcy court is not needed; (2) whether modifying the stay will promote judicial economy and whether refusing to grant relief would cause greater interference with the bankruptcy case by causing more matters to be litigated in bankruptcy court; and (3) whether the estate can be protected by requiring creditors to enforce any judgment obtained as a result of lifting the stay through the bankruptcy court. Id. It has been said that where no great prejudice to the bankruptcy estate would result, it is "often . . . more appropriate to permit proceedings to continue in their place of origin." Id. (quoting S. Rep. No. 989, 95th Cong. 2d Sess. 50 (1978)). Ultimately, the decision rests within the bankruptcy court's discretion. Id.

In order to determine if stay relief is warranted as to the Guaranty Action, the court must initially determine whether the bankruptcy court's expertise is needed in resolving the amount of the debtors' liability. In the Guaranty Action, the court of appeals remanded with specific instructions to determine the "amount of the guarantors' liability." Barrow v. D.A.N. Joint Venture Props. of N.C., LLC, 755 S.E.2d 641, 648 (N.C. Ct. App. 2014). While a simple calculation is not a matter that requires the special expertise of the bankruptcy court, the court must examine whether there are any bankruptcy-specific issues that may affect the calculation of liability. The court first notes that

the debtors have filed an objection to DAN's claim that lists the following defenses:(1) the statute of limitations; (2) failure of condition precedent under the Plan; (3) material modification of the guaranty; (4) waiver and estoppel; (5) lack of consideration; (6) inaccurate amount, status and interest rate of claim;[3] (7) lack of entitlement to pre- and post-petition interest, attorneys' fees and costs;[4] (8) release of liens upon Plan confirmation; and (9) setoff of amounts owed due to DAN's alleged violation of federal non-bankruptcy law and state law.  The court assumes that the debtors/guarantors will assert similar claims in the Guaranty Action.  Several of these defenses/claims have already been considered and rejected.

Three of the defenses asserted by the debtors to DAN's claim have already been ruled upon by the North Carolina Court of Appeals.  The court of appeals found in both the Guaranty Action and the Foreclosure Action that the debtors are barred by *res judicata* from asserting the statute of limitations as a defense.[5]  Guaranty Action, 755 S.E.2d at 648; Foreclosure Action, In re Foreclosure of a N.C. Deed of Trust Executed by L.L. Murphrey Co., 764 S.E.2d 221, 230 (N.C. Ct. App. 2014).  Additionally, in the Foreclosure Action, the court of appeals found that executing restated loan documents was not a condition precedent to the Plan's validity and enforceability.  764 S.E.2d at

---

[3]Although the December 16, 2011 Order in the bankruptcy court adversary proceeding noted the debtors' and Doris Murphrey's contention that the interest rate should be 6%, it did not clearly adopt this as the applicable rate anywhere in the Order.

[4]DAN is expressly not seeking post-petition interest, attorneys' fees or costs, so the debtors' objection to such amounts is moot.

[5]The North Carolina Court of Appeals found that defenses and claims focusing on how the Plan impacts the relationship between the guarantors and DAN are barred by the doctrine of *res judicata* to the extent that they are encompassed in the bankruptcy court's orders in the adversary proceeding.  Guaranty Action, 755 S.E.2d at 648.  The court notes that this reasoning may be equally applicable to other defenses/claims asserted by the debtors/guarantors.

226.  Finally, the court of appeals found that confirmation of the Plan did not release DAN's liens, and that on the contrary, "the parties intended for the deed of trust to operate as security for the Wachovia notes, as modified under the terms of the Confirmed Plan."  764 S.E.2d at 229-30.

In light of the foregoing, it is apparent to the court that the debtors' remaining defenses and claims do not involve issues that require the bankruptcy court's expertise.  The issues left to be determined are clearly matters of contractual interpretation, calculation and state law; all matters well within the province and expertise of the state court.  Furthermore, although DAN seeks relief from the stay to have the state court determine the amount of liability, it has explicitly recognized that it must come back to the bankruptcy court to enforce its claim.  The court also notes that the debtors themselves chose the Greene County Superior Court as the appropriate forum in which to bring the Guaranty Action.  The court finds that application of the In re Robbins factors weigh in favor of granting relief.

Based on the foregoing reasons, DAN's motion for relief from stay to allow the superior court to determine the amount of the debtors' liability in the Guaranty Action is granted, the court finding that under the specific facts of this case, cause exists to modify the stay to allow that calculation to be made by the state court.

The court next must consider whether any grounds exist to lift the stay for the purpose of allowing DAN to complete its foreclosure action in Greene County Superior Court.  In addition to arguing that cause exists under the In re Robbins analysis, DAN also argues that cause exists because its interests are not adequately protected and that the debtors have no equity in the Property and the Property is not necessary for an effective reorganization.  The court will first address DAN's adequate protection argument.  In order to establish a basis for relief due to a lack of adequate

protection, the moving party must show that: (1) it is owed a debt by the debtor, (2) it possesses a valid security interest securing the debt, and (3) the collateral securing the debt is declining in value and the debtor has failed to provide adequate protection of the movant's interest. In re Carroll, Case No. 11-02362-8-RDD, 2012 WL 931627, at *2 (Bankr. E.D.N.C. March 19, 2012). A showing that the movant holds a security interest and that the debtor has defaulted on payments will not warrant relief from the stay. Id.

The validity of the debt owed to DAN and its security interest has been found by the Greene County Superior Court and the North Carolina Court of Appeals, and is further evidenced by such documents as the Plan, the guaranty agreement and the deed of trust executed by the guarantors. However, although the debtors' schedules indicate that the Property is worth far less than the indebtedness, DAN did not present any evidence that the value of the Property was actually depreciating.[6] Thus, the court finds that cause for relief from the stay cannot be found for a lack of adequate protection.

The court will next evaluate DAN's § 362(d)(2) argument. A debtor lacks equity in the property if the property's value is less than the debt owed. In re McCullough, 495 B.R. 692, 696 (W.D.N.C. 2013). Once a creditor establishes lack of equity, it becomes the debtor's burden to establish that the collateral is necessary to an effective reorganization. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be

---

[6]DAN also made allegations in its motion for relief that it lacks adequate protection because the debtors "have made clear they have no intention of making any type of adequate protection payments," and that they "refuse to name DAN as a loss payee on any insurance policy providing coverage for the Subject Property." DAN did not make these arguments at the hearing or proffer any supporting evidence. As such, the court deems them to be abandoned or waived.

needed for it; but that the property is essential for an effective reorganization *that is in prospect*." Id. at 375-76.  In other words, there must be a reasonable possibility of successful reorganization within a reasonable time, and the property must be necessary to that reorganization.  Id.

It is clear that the debtors lack any equity in the Property.  The male debtor has no interest in the Property.  The female debtor's one-half vested remainder interest in the Property, which is subject to the life estate of Doris Murphrey, has a scheduled value of $127,161.03.  This is far less than the amount listed on DAN's proof of claim, $6,854,840.04.  Based on this showing of lack of equity, the debtors have the burden of establishing that there is a reasonable possibility of successful reorganization within a reasonable time for which the Property is needed.  The debtors offered the testimony of the male debtor, Mr. Barrow, to that end.

At the January 28, 2015 hearing, Mr. Barrow testified that the Property is presently leased to farmers as farmland, but that going forward, the debtors intend to sell the Property to Square One, LLC ("Square One"), an entity owned by Mr. Barrow and his sons, to be utilized as hog facilities. Currently, four of the six tracts within the Property have hog permits, and the Property also has lagoons.  The contemplated use of the Property would require Square One, or another purchaser, to build new hog facilities to replace the outdated ones currently on the Property.  The new owner would then enter into contracts with integrators that would supply livestock to the facilities. Proceeds from this operation would provide income to fund the debtors' plan.  Mr. Barrow testified that Square One has the funds to purchase the Property and build new facilities, and that the unsettled legal status of the Property, i.e.,whether or not DAN will be authorized to proceed to foreclose, is the only thing preventing Square One from doing so and moving forward with operations.  Mr. Barrow also testified that the land surrounding the Property is owned by the debtors' family and

would be available for lease by Square One in order for two of the tracts to realize the full value of the hog permits. Mr. Barrow testified that it would take about a year before the contemplated operations would lead to any cash flow, because it would take several months to build new facilities and install the animals.

On March 11, 2015, the debtors filed their Chapter 11 Plan and Disclosure Statement, which provides that the debtors will fund the plan through continued operations of various business entities in which they hold an interest, including Square One, and if necessary, from liquidating certain tracts of real property. Disclosure Statement, Doc. No. 90 at 15. The debtors' plan provides the basis for finding that an effective reorganization is in prospect. Furthermore, the plan clearly contemplates having use of the Property. As such, the Property is necessary to a successful reorganization as provided for in the debtors' plan in several respects: (1) as a planned sale, either to Square One or another entity, and (2) as necessary to the workings of an entity in which the debtors have an interest, namely Square One. Under the debtors' plan, the cash flow generated by operations on the Property will be utilized to fund the debtors' plan. This shows how the Property plays an integral role in a successful reorganization of the debtors. Although DAN argues that the Property is not necessary to a successful reorganization because the debtors do not presently derive any income from it, the court views this as actually lending further credence to the necessity of the Property. Mr. Barrow testified that the Property is not generating income precisely because of the threat of foreclosure; it would be futile for Square One or another entity to purchase the Property and expend resources prepping it for operations in light of DAN's ability to foreclose at any given time. Denying DAN relief from the stay will provide the stability the debtors need to move forward with their plans for the Property and begin generating cash flow, which is needed to fund the debtors' plan. Further, the

debtors are certainly interested in reorganizing and have the means to do so.  Thus, the court finds

that the debtors have a reasonable possibility of a successful reorganization within a reasonable time,

and that the Property is necessary to such a successful reorganization.  See In re Deep River

Warehouse, Inc., Case No. 04-52749, 2005 WL 1287987, at *12 (Bankr. M.D.N.C. March 14, 2005)

(whether proposed plan could be confirmed was "far from certain," but court could not conclude that

confirmation of the plan, or some amended version of it, was not possible or even unlikely); In re

Penny, 52 B.R. 816, 819 (Bankr. E.D.N.C. 1985) (finding that tracts were an important part of the

debtor's overall liquidation program, which, if followed, would realize greater proceeds than

creditor's desired immediate foreclosure).

　　　　In addition, the court declines to grant DAN relief from the stay for cause under the In re

Robbins analysis.  The potential for prejudice to the debtors' estate caused by granting relief in this

instance outweighs any hardship to be incurred by DAN.  In re Robbins, 964 F.2d 342, 345 (4th Cir.

1992).  In applying the In re Robbins factors, the expertise of the bankruptcy court is necessary

because the Property bears an intimate relationship to the debtors' plan of reorganization.  Granting

relief from stay would cause great interference with the bankruptcy case in the sense that it would

permit DAN to remove an important element from the debtors' planned reorganization.  Thus, the

only way the estate can be protected is by denying relief from the stay.  Clearly, the balance of

equities favors the debtors because the Property plays a major role in their reorganization.

　　　　For the reasons set forth above, DAN's motion for relief from stay as to the Guaranty Action

is GRANTED, and DAN's motion for relief from stay as to the Foreclosure Action is DENIED.


**END OF DOCUMENT**